IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 12–cv–00383–WYD–KMT

THERON JOHNNY MAXTON 85599-071,

     Plaintiff,

v.

UNITED STATES OF AMERICA,
BOP DIRECTOR WASHINGTON D.C.,
T.K. TOZZA RHODES WARDEN FCI,
CHARLES DANIEL WARDEN FCT,
S. COLLINS HEALTH SERVICES USP, and
LT. ANTHONY USP FLORENCE,

     Defendants.

---

**ORDER**

---

This matter is before the court as a result of Plaintiff's motion seeking my removal from

his case, stating, "so I can personlly (sic) kill Judge Kathleen M. Tafoya for being racist and

prejudiced towards prisoners, taking the Defendants (sic) side" (hereinafter "Motion").[1]  [Doc.

---

[1] Threatening judicial officers is nothing new to the Plaintiff.  Plaintiff, "an inmate in the South Carolina state correctional system, was convicted in the United States District Court for the District of South Carolina of violating 18 U.S.C. § 876 by sending a letter to federal Magistrate Charles Gambrell threatening to kill him." *United States v. Maxton*, 940 F.2d 103, 104 (4th Cir. 1991).  That court observed, "[a]fter this trial, during which Gambrell testified, Maxton wrote another letter to the magistrate, again threatening his life. For sending this letter, on December 18, 1989, Maxton was convicted in district court of again violating 18 U.S.C. § 876, as well as violating 18 U.S.C. § 1513. At sentencing on the latter convictions, the Court departed upwardly from the suggested guideline range because of Defendant's 'extreme

No. 39.]  District Judge Wiley Y. Daniel referred the threat to the United States Marshal Service and denied the plaintiff's request for removal, but left me to determine whether recusal in light of this threat is warranted.  [Doc. No. 40.]

Plaintiff's professed desire to kill apparently was occasioned as a result of my recommendation to the District Court that Plaintiff's Motion for a Restraining Order against the prison staff defendants be denied.  That denial was based upon the plaintiff's failure to "address the requisite factors of the balance of harm and the impact of an injunction on the public" to obtain injunctive relief and on his failure "to demonstrate that he has a substantial likelihood of success on the merits of his claims."[2]  (Recommendation of Magistrate Judge [Doc. No. 38] at 2.)

Under 28 U.S.C. § 144, a judge must recuse if a party files a "timely and sufficient affidavit" establishing that the judge has a personal bias or prejudice against the party seeking recusal, or in favor of the adverse party.  Title 28 U.S.C. § 144, applied in

---

recidivism' and his 'egregious serious criminal record.'"  *Id.*  The Fourth Circuit again addressed Mr. Maxton's behavior in 1999, observing that Plaintiff had been convicted of eight counts of "sending threatening letters through the mail in violation of 18 U.S.C. § 876 and making threats to assault or kill judicial officers or their families in retaliation for the performance of their official duties in violation of 18 U.S.C. § 115."  *United States v. Maxton*, 182 F.3d 911, *1 (4th Cir. 1999).  That court observed that Plaintiff was apparently "incarcerated on state charges both at the time he committed the federal offenses and at the time of trial . . . ."  *Id.*

[2] Again, Plaintiff is no stranger to the elements required to obtain injunctive relief since he was appealing at least one other Magistrate Judge's recommendation against grant of a preliminary injunction at least as early as 1996.  *See Maxton v. Bretz*, 92 F.3d 1180, *1 (4th Cir. 1996).

2

*Winslow v. Lehr*, 641 F. Supp. 1237 (D. Colo. 1986).  Although all factual allegations in an affidavit filed under § 144 must be presumed true, the presumption is not irrebutable.  The affidavit is to be "strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial."  *SEC v. Solv-Ex Corp.*, 164 F. Appx. 765, 766 (10th Cir.2006) (*citing United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir.1992)).  "'The bias charged must be of a personal nature and must be such as would likely result in a decision on some basis other than what the judge learned from his participation in the case.'" *Id.* (*quoting United States v. Irwin*, 561 F.2d 198, 200 (10th Cir.1977 )).

The Plaintiff has filed no such affidavit supporting his Motion.  Nevertheless, I have strived in my review of Plaintiff's filing to reflect thoughtfully and thoroughly on the assertions made, but cannot agree I have demonstrated, or that I hold, a disqualifying personal bias against him and in favor of the defendants, none of whom I personally know.  In the absence of such, I must consider my concomitant duty to sit in this case and manage my portion of the proceedings with an eye to their "just, speedy, and inexpensive determination." Fed. R. Civ. P. 1.

Recusal under Title 28 U.S.C. § 455 presents a "considerably broader scope for claims of prejudice and bias." *Glass v. Pfeffer*, 849 F.2d 1261, 1268 (10th Cir.1988).  Recusal is appropriate where the judge's impartiality "might reasonably be questioned," or where the judge has "a personal bias or prejudice concerning a party." Title 28 U.S.C. § 455(a), (b)(1). No affidavits are required.  *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987).  Under this statute, the judge must recuse when there is the appearance of bias, regardless of whether there is actual bias. *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th

3

Cir.2002).  The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.  *Id*.  For purposes of disqualification under § 455(b)(1), I rely on the Motion and statements therein as filed, and consider whether they establish a reasonable appearance of, rather than actual, personal bias or prejudice.

Without question, a legitimate threat to one's safety might cause a threatened person to hold some bias against the person doing the threatening.  The US Marshals certainly take any and all threats against a judicial officer seriously and I do not doubt they will fully investigate this one.  At this time, the plaintiff is held in a high security, federal penitentiary from which his release is not projected until he reaches the age of approximately 77 years in the year 2032.  He is currently 57 years old.  The plaintiff's extremely violent past was already well-documented as early as 1991, when the Fourth Circuit Court of Appeals summed up his criminal history up to that point stating

> Defendant Maxton appears to be a career criminal with a very unsavory past. Shortly after his eighteenth birthday, Maxton was arrested several times, for disorderly conduct, assault and battery, trespassing, and attempted armed robbery and larceny. On this last charge, he was convicted and sentenced to three years imprisonment in a South Carolina penal institution, from which he was released on May 1, 1975. On the day of his release, Maxton held up a cab driver, whom he beat with his fist, threatened with an open knife to the throat, and forced to declothe. Maxton then committed buggery upon his victim, took from him his money, clothing, jewelry, and cab, and left him at the Spartanburg County Landfill clothed only in his hat and shoes. For these heinous acts, Maxton was convicted of armed robbery and buggery, and sentenced to ten years imprisonment. Following his release from prison this time, Maxton, within a forty-five day period, was arrested another four times, for petty larceny, drunk and disorderly conduct, assault and battery, and aggravated assault and battery. This last arrest was for stabbing a female with a butcher knife, and for this Defendant received another ten-year sentence-the sentence he is currently serving.

4

> While in prison for this last offense, Maxton supposedly had several scuffles with prison officials. Because of these, he wrote to federal Magistrate Gambrell and South Carolina Governor Carroll Campbell to complain of his treatment. When this garnered no response, Maxton wrote two threatening letters to Governor Campbell. One stated in part, "I'll be the one to get you, no matter how long it takes me. If I don't get you, I will get Iris or Christie or whoever close to you." The other letter reminded the Governor, "I'll personally kill you when I get out of prison." Because of these letters, Maxton was charged with and convicted, in state court, of threatening the life of a public official, for which he received an additional seven years in prison.

*United States v. Theron Johnny Maxton*, 940 F.2d 103, 104 (4th Cir. 1991). As noted *infra* Plaintiff's behavior continued unabated.

Further, the threat to kill a judge simply because the court found the plaintiff had not addressed all the elements required for a preliminary injunction is unreasonably extreme, indicating to this court a high level of irrationality and failure of cognitive thinking which is perturbing even when considering that his ability to plan and execute both an escape and the murder of a federal judge is extremely unlikely.

In applying § 455(a), a judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue, but rather whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993) (citations omitted). Given the violence of the threat, my knowledge about the disturbing patterns of behavior of the plaintiff's life to date, the ongoing investigation by the US Marshal Service and the court's impressions concerning the mental faculties of an inmate plaintiff who makes such repeated overt threats on judges, a reasonable

person – not to mention an unreasonable one – might harbor doubts about my impartiality in this case.  Therefore, I feel that my recusal is appropriate.

Dated this 31st day of October, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge